UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦

**VILLAGE OF COXSACKIE,**

        **Plaintiff,**

     **-v-**             **1:07-CV-131**

**VEOLIA WATER NORTH AMERICA-NORTH
EAST, LLC, and US FILTER OPERATING
SERVICES, INC., d/b/a VEOLIA WATER NORTH
AMERICA OPERATING SERVICES, INC., d/b/a
VEQLIA WATER NORTH AMERICAN
OPERATING SERVICES, LLC, d/b/a US FILTER
RECOVERY SERVICES (MID-ATLANTIC), INC.**

        **Defendants.**

♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦

APPEARANCES:

Young, Sommer, Ward, Ritzenberg, Baker & Moore, LLC
Joseph F. Castiglione, Esq., of Counsel
Executive Woods
5 Palisades Drive
Albany, New York 12205
Attorneys for Plaintiff

Wilson, Elser, Moskovitz, Edelman & Dicker, LLP
Vincent J. DeLeonardis, Esq., of Counsel
Elizabeth J. Grogan, Esq., of Counsel
677 Broadway - 9th Floor
Albany, New York 12207
Attorneys for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

**BACKGROUND**

   Plaintiff Village of Coxsackie ("Village") moves (Dkt. No. 6) for partial summary

judgment in this diversity action stemming from the "Agreement for Operations, Maintenance and

Management Services" ("Contract") dated June 9, 2003, pursuant to which defendants agreed to operate, manage and maintain the Village's water and wastewater treatment facilities. Section 2.1 of the Contract required defendants to staff the facilities with the Village's existing employees pursuant to the "Employee Management Agreement" ("EMA"). The EMA provided that these Village employees would be "leased" to defendants, that the Village would pay wages and benefits directly to the leased employees, that the Village would present defendants a monthly itemized list of the wage and benefits costs for each leased employee, and that defendants would reimburse the Village for these costs within 30 days of receipt of the itemized list.

On November 4, 2005, the Village notified defendants that they were in material breach of the Contract by virtue of their failure properly to operate and manage the facilities. The notice expressly invoked the 30-day cure provision of the Contract and stated that, in the event of defendants' failure to cure the breach, the Village would terminate the Contract. By letter dated December 12, 2005, the Village stated that defendants had failed to cure and that the Contract was terminated for cause, effective January 1, 2006.

In its complaint, the Village claims that defendants failed to reimburse it for leased employees' wages and benefits for the period of June through December 2005, for a total sum of $137,105.45. The first and second causes of action seek to recover this amount on theories of breach of contract and account stated. The third cause of action is to recover $12,610 allegedly paid by the Village to an outside engineering firm as a result of defendants' failure properly to operate and manage the facilities.

In their answer, defendants assert affirmative defenses as follows: first, payment; second, failure to mitigate; third, failure to state a cause of action; fourth, superseding cause; fifth, statute

of frauds; sixth, accord and satisfaction; and seventh, breach of contract by the Village excusing defendants from performance.

Defendants interpose two counterclaims. The first avers that defendants did not breach the Contract, that the Village's termination thereof was not a termination for cause, and that therefore under the terms of the Contract the Village was required to pay defendants a termination fee of $33,833.54.

The second counterclaim asserts that the Village failed to reimburse defendants for certain expenses, overages, and costs as required by the contract. Defendants seek reimbursement for the following costs, totaling $94,185.42: poly aluminum chloride for October and November 2005, $6,595.33; electricity, $14,902.61; repair and maintenance overage, $28,372.74; SCADA system, $21,595.20; and labor, $22,719.54.

On the present motion, the Village seeks summary judgment on its first two causes of action in the amount of $137,105.45 based on defendants' alleged failure to reimburse the employment costs for the leased employees. The Village also seeks dismissal of the first, second, fourth, sixth and seventh affirmative defenses and both counterclaims on the ground of defendants' failure to serve a timely notice of claim in compliance with N.Y.C.P.L.R. 9802. The Village does not seek summary judgment on its third cause of action. As set forth below, the Court grants the motion in part and denies it in part.

## DISCUSSION

**Summary judgment standard**

Summary judgment is appropriate "where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law."

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006) (internal quotation marks omitted).  A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all inferences against the moving party.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**The Village's claim for leased employees' wages and benefits**

The undisputed facts demonstrate that defendants breached their obligation to reimburse the Village $137,105.45 for leased employees' wages and benefits pursuant to the Contract and EMA.  Based on the parties' statements of material facts, fully supported by the record, it is undisputed that in accordance with the Contract and the EMA, the Village provided and defendants received itemized payroll records for the Village's water and sewer employees as follows: records dated July 26, 2005 reflecting sums due for leased employees for June 2005; records dated September 22, 2005 for July and August 2005; records dated December 9, 2005 for September, October, and November 2005; and records dated January 24, 2006 for December 2005.  The sums claimed are set forth in the Village's records and supported by the affidavit of Valerie Murphy, Deputy Village Clerk.  It is further undisputed that defendants have failed to pay these sums (with the exception of an alleged payment of $15,609.88 which is addressed below).

In opposing the motion, defendants submit no competent evidence challenging any of the leased employee costs demanded in the complaint.  Defendants dispute only one payroll item claimed by the Village, *viz.*, $7,517.12 of vacation pay for one leased employee, Paul Snyder, but

they adduce no evidence that this was not a proper charge. Moreover, on this record, the Court finds an implied agreement to pay this sum as an account stated; the payment was reflected in records submitted to defendants on July 26, 2005, and defendants made no objection to it prior to the March 13, 2006 letter. *See generally Interman Indus. Prods., Ltd. v. R.S.M. Electron Power, Inc.*, 37 N.Y.2d 151, 153-54 (1975). Nor do defendants submit competent evidence supporting any affirmative defense that would defeat summary judgment for unreimbursed leased employees' wages and benefits.

Defendants contend that they have not breached their reimbursement obligation because the Villages' conduct in providing the itemized lists of wage and benefits costs for each leased employee did not trigger the obligation. Rather, they argue, the Village was required to give some further notice or make some type of demand for payment. There is no support for this contention in the Contract, the EMA, or the parties' conduct.

Defendants argue that they owe the Village no money, because after sums owed to defendants are offset, the Village's claim amounts to $15,609.88, which defendants paid to the Village on March 13, 2006.[1] Defendants adduce no competent evidence in support of these offsets. Rather, defendants rely on statements by the Village's lawyer in a settlement letter, dated May 19, 2006. Defendants do not, however, advance any reason why these statements are not

---

[1] The offsets on which defendants relies as reducing the Village's claim to $15,609.88, set forth in counsel's March 13, 2006 letter, are essentially the same as those set forth in defendants' counterclaims. The offset amounts in the March 13, 2006 letter are: termination fee, $33,833.54; poly aluminum chloride for October and November 2005, $6,595.33; electricity, $14,902.61; repair and maintenance overage, $13,372.74; SCADA system, $21,595.20; and labor, $22,719.54. The March 13, 2006 letter claims one additional offset of $960 for "December sludge disposal." It also claims a repair and maintenance overage of $13,372.74, whereas the second counterclaim claims $28,372.74.

protected by section 408(a)(2) of the Federal Rules of Evidence.[2]  Defendants' unsupported contentions that they are owed these amounts do not raise a question of fact regarding the Village's entitlement to the sums sought for unreimbursed leased employees' wages.  Rather, final judgment will be reduced by any payment made by defendants, such as the alleged payment of $15,609.88 on March 13, 2006, or any sums properly chargeable to the Village.  Based on the undisputed facts, the Village is entitled to summary judgment on its breach of contract claim for $137,105.45 for unreimbursed leased employees' wages and benefits pursuant to the Contract and the EMA.

**Counterclaims**

The Village further moves to dismiss the two counterclaims on the ground that defendants cannot offset the claimed amounts due to their failure to file timely notices of claim.  Under New York law, no contract action may be maintained against a village unless a written verified claim was filed with the village clerk within one year after accrual of the cause of action.  N.Y.C.P.L.R. 9802.[3]  The notice of claim requirement applies to counterclaims.  *See County of Orange v.*

---

[2] Section 408 of the Federal Rules of Evidence, headed "Compromise and Offers to Compromise," provides in part:
> (a) Prohibited uses.--Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount[:]
> ***
> (2) conduct or statements made in compromise negotiations regarding the claim[.]

[3] N.Y.C.P.L.R. 9802 provides in part:
> [N]o action shall be maintained against the village upon or arising out of a contract of the village unless the same shall be commenced within eighteen months after the cause of action therefor shall have accrued, nor unless a written verified claim shall have been filed with the village clerk within one year after the cause of action shall have accrued[.]
> *** The omission to present a claim or to commence an action thereon within the

*Grier*, 817 N.Y.S. 2d 146, 148 (2d Dep't 2006); *Matter of Rattner v. Planning Commn. of Vil. of Pleasantville*, 548 N.Y.S.2d 943, 947-48 (2d Dep't 1989).

Where, however, a counterclaim asserts a right to recoupment arising from the same transaction asserted in the complaint, New York courts have permitted a defendant to pursue the counterclaim despite failure to file a notice of claim. *See Town of Amherst v. County of Erie*, 668 N.Y.S.2d 848, 849 (4th Dep't 1998); *Rochester-Regional Transp. Dist., Inc. v. Trans World Airlines, Inc.*, 383 N.Y.S.2d 856, 857-58 (Sup.Ct. 1976). New York's high court explains recoupment as follows:

> 'Recoupment' means a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered. Of course, such a process does not allow one transaction to be offset against another, but only permits a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.

*Matter of National Cash Register Co. v. Joseph*, 299 N.Y. 200, 203 (1949) (citations omitted) (quoted in *In re McMahon*, 129 F.3d 93, 96 (2d Cir.1997)).

On this record, the Court cannot determine whether recoupment may properly be applied here to allow the Village's recovery to be reduced by sums sought in the counterclaims. *See generally Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 146-47 (2d Cir. 2002) (declining to apply recoupment to obligations arising from discrete and independent units within a single integrated transaction); *Malinowski v. New York State Dep't of Labor*, 156 F.3d 131, 135 (2d Cir. 1998) ("[I]n light of the equitable nature of the recoupment remedy, the facts in the particular case are important."); *Bendat v. Premier Broadcast Group, Inc.*, 572 N.Y.S. 2d 796, 798-99 (3d

---

respective periods of time above stated applicable to such claim, shall be a bar to any claim or action therefor against said village[.]

Dep't 1991) (stating that all aspects of recoupment claims should be examined).

Due to its reliance on the notice of claim argument, the Village has not submitted affirmative proof going to the merits of the counterclaims.[4]  As the case stands, the Court denies so much of the Village's summary judgment motion as seeks dismissal of the two counterclaims.

## CONCLUSION

Accordingly, the Court grants so much of the Village's motion as seeks summary judgment on its claim for $137,105.45 for unreimbursed leased employees' wages and benefits. The Court denies the remainder of the relief sought in the motion.  Entry of judgment will await resolution of the third cause of action and counterclaims.  *See* Fed. R. Civ. P. 54(b).  The Court strongly urges the parties to settle the remaining issues.

It is therefore

ORDERED that plaintiff's motion for partial summary judgment (Dkt. No. 6) is granted to the extent that plaintiff is awarded summary judgment on its claim for $137,105.45, and otherwise denied.

IT IS SO ORDERED.

September 5, 2007
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge

---

[4] Based on the New York State Department of Health documents in the file, it appears virtually certain that the Village terminated the contract for cause and that the first counterclaim (for $33,833.54 as a termination fee) lacks merit. However, on the present posture of the case, the issue is not squarely before the Court.